UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SANDAR WARA,

Plaintiff,

-against-

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, UR MENDOZA, Director of the U.S. Citizenship and Immigration Services, and SUSAN RAUFER, Director of the USCIS Newark Asylum Office,

Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-03535 (OEM)

ORELIA E. MERCHANT, United States District Judge:

Plaintiff Sandar Wara ("Plaintiff") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, seeking an order from this Court directing defendants the United States Citizenship and Immigration Services ("USCIS"), Ur Mendoza, Director of USCIS, and Susan Raufer, Director of USCIS Newark Asylum Office ("Defendants") to adjudicate Plaintiff's I-589 petition for asylum and for withholding of removal. Amended Complaint ("Am. Compl."), ECF 14. Before the Court is Defendants' fully-briefed motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject-matter jurisdiction and for failure to state a claim on which relief can be granted.[1] For the following reasons, Defendants' motion is denied in part and granted in part.

[1] Defendants' Notice of Motion, ECF 18; Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem."), ECF 18-1; Plaintiff's Response in Opposition ("Pl.'s Opp'n"), ECF 19; Affidavit of Plaintiff in Support of Opposition ("Pl.'s Aff."), ECF 19-1; and Defendants' Reply ("Defs.' Reply"), ECF 20.

## BACKGROUND[2]

Plaintiff, a citizen of Myanmar, currently resides in Jamaica, New York. Am. Compl. ¶ 5. On July 19, 2021, Plaintiff filed an I-589 application for asylum and completed his biometrics in August 2021. *Id.* ¶¶ 7-8. Plaintiff alleges that Defendants have not taken any further action on Plaintiff's asylum application. *Id.* ¶ 9. Specifically, Plaintiff alleges that Defendants have not scheduled an interview on Plaintiff's application, nor issued a decision on Plaintiff's application. *Id.* ¶¶ 24-25. According to Plaintiff, he has made numerous attempts to contact USCIS to inquire about the status of his application but has not received any information from USCIS on when his application will be adjudicated. *Id.* ¶¶ 26-27. Plaintiff alleges he has not been notified that USCIS considers him to be a "potential national security concern," which he claims would explain the delay in the adjudication of his application. *Id.* ¶ 38.

Plaintiff alleges that, due to Defendants' delay in adjudicating his application, he has "suffered emotional and financial hardship," he "is separated from his ill brother in Malysia and unable to travel to see him in order to say goodbye," and he is unable to travel internationally to continue his work as a "religious counselor and humanitarian provider" without fear of being denied reentry in the United States. *Id.* ¶ 31. Plaintiff also alleges that until his application is adjudicated, he "is unable to permanently remain in the United States, safely and away from the dangers of his home country[.]" *Id.* Plaintiff states that he "is unable to resolve this matter through administrative channels" and therefore seeks relief under the APA. *Id.* ¶ 29. He asserts that Defendants' delay in adjudicating his I-589 application "is unreasonable in relation to their stated processing times for like applications." *Id.* ¶ 32. According to Plaintiff, Defendants owe him a

[2] The following facts are drawn from the amended complaint. For the purposes of resolving the motion to dismiss, the Court assumes all factual allegations therein to be true and draws all reasonable inferences in favor of Plaintiff as the non-moving party. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

"duty to act upon [his] application" and have "unreasonably failed to perform these duties." *Id.* ¶ 36.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on May 14, 2024, initially asserting claims under both the Mandamus Act and the APA. Complaint, ECF 1. On October 3, 2024, Plaintiff filed an Amended Complaint asserting a single claim under the APA. *See* Am. Compl. Defendants' fully briefed motion to dismiss the Amended Complaint was filed on December 16, 2024.

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

A motion to dismiss on jurisdictional grounds "may be either 'facial,' i.e., based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' i.e., based on evidence beyond the pleadings." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (citation omitted). Facial attacks challenge the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the court to accept all factual allegations in the complaint as true. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits

attached thereto."). Unlike a facial attack, a factual attack places the "jurisdictional facts [ ] in dispute[,]" *Harty*, 28 F.4th at 441, by "proffering evidence beyond the [p]leading[s][.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, at 158 (E.D.N.Y. 2022). In resolving factual attacks on jurisdiction, the court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

**B. Federal Rule of Civil Procedure 12(b)(6) Standard**

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's

statement of a claim for relief without resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006).

Under Rule 8, a plaintiff need only provide a short, plain statement of their claim against the defendants, so the defendants have adequate notice of the claims against them. *See* FED. R. CIV. P. 8. To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (citation omitted).

**DISCUSSION[3]**

Plaintiff brings an APA unreasonable delay claim, requesting that this Court compel Defendants to adjudicate Plaintiff's asylum application. *See* Am. Compl. Defendants argue that Plaintiff's APA claim should be dismissed for lack of subject-matter jurisdiction because the Immigration and Nationality Act ("INA"), which allows noncitizens to apply for asylum, does not provide a private right of action to enforce the timelines set forth in 8 U.S.C. § 1158(d)(5). Defs.' Mem. at 17-18. Alternatively, Defendants argue that, even if the Court had jurisdiction, Plaintiff's claim fails on its merit because, under the six factors outlined in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), Plaintiff cannot show that the two-year delay in adjudicating his application before commencing this action is unreasonable. *Id.* at 21. The Court addresses the jurisdictional argument first.

[3] Defendants' 12(b)(1) and 12(b)(6) motion to dismiss Plaintiff's mandamus claim from the initial complaint is moot because, as Plaintiff correctly noted in his opposition, *see* Pl.'s Opp'n at 5 n.1, the operative complaint, the Amended Complaint, no longer advances a claim for mandamus relief.

**A. The Court Has Subject Matter Jurisdiction over Plaintiff's APA Claim**

Defendants argue that this Court lacks jurisdiction to hear Plaintiff's APA claim because the INA, 8 U.S.C. § 1158(d), precludes judicial review of the timelines of asylum application adjudications. Defs.' Mem. at 14-15. The Court disagrees.

Section 1158(d) directs governmental agencies to process asylum applications within a certain timeframe. *See* 8 U.S.C. § 1158(d). Specifically, "in the absence of exceptional circumstances," an initial interview or hearing must take place no later than 45 days after the date the application was filed, and the agency must issue a final decision no later than 180 days after the date the application was filed. *Id.* § 1158(d)(5)(A)(ii)-(iii). Section 1158(d)(7) also provides that there is no private right of action to enforce the timeframes set forth in Section 1158(d)(5)(A), and therefore Plaintiff has no right to sue Defendants for their failure to adjudicate his asylum application within these timeframes. Therefore, this Court does not have subject matter jurisdiction over an APA claim predicated on an agency's failure to abide by Section 1158(d)'s timeframes. *See Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 52 (S.D.N.Y. 2020) ("[T]he Court would lack subject matter jurisdiction over an APA claim premised on an agency's failure to abide by § 1158(d)'s timing directives.").

However, Section 1158(d)(7)'s bar on private suits does not deprive this Court of jurisdiction to hear Plaintiff's APA claim because Plaintiff's APA claim is not premised solely on Defendants' failure to abide by Section 1158(d) timelines. Instead, Plaintiff's APA claim is also premised on Defendants' "unreasonabl[e] delay[] and fail[ure] to perform a mandatory action in adjudicating Plaintiff's application." Am. Compl. ¶ 35; *see id.* ¶¶ 28, 32, 36. In stating his APA claim, Plaintiff cites various APA provisions that address unreasonable delay and provide that a reviewing court can "compel agency action unlawfully withheld or unreasonably delayed." *Id.*

¶¶ 2, 33. Therefore, Plaintiff alleges that the APA was violated, separate and apart from a claim asserting that the INA's timelines were violated.

Aligning itself with most courts in this Circuit, the Court concludes that Plaintiff's right to adjudication within a reasonable time exists independently of Section 1158(d). *See, e.g.*, *De Oliveira v. Barr*, 19-CV-1508 (ENV), 2020 WL 1941231, at *3 (E.D.N.Y. Apr. 22, 2020); *Ying Yu Liu v. Wolf*, 19-CV-410 (PGG), 2020 WL 2836426, at *6 (S.D.N.Y. May 30, 2020); *Fangfan Xu*, 434 F. Supp. 3d at 51-52 (S.D.N.Y. 2020) ("Plaintiff's right to adjudication within a reasonable time exists independently of § 1158(d), and the Court concludes that § 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious."); *Pesantez v. Johnson*, 15-CV-1155 (BMC), 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) ("The conclusion that no relief is available to plaintiff via the Mandamus Act does not end the inquiry, because I must also consider her allegations of agency inaction under the Administrative Procedure Act, which provides individuals with a cause of action when agency adjudication has been unreasonably delayed."). Accordingly, Defendant's motion to dismiss under Rule 12(b)(1) is denied.

**B. Plaintiff Has Failed to State a Claim under the APA**

The APA requires that, "within reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Federal courts have the power to "compel agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "However, the judicial review provisions of the APA do not apply 'to the extent that . . . statutes preclude judicial review.'" *Shabaj v. Holder*, 718 F.3d 48, 52 (2d Cir. 2013). To determine the reasonableness of the delay in processing asylum application, the Court "look[s] to the source of delay – e.g., the complexity of the investigation as well as the extent to which the defendant

participated in delaying the proceeding," *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999) and to the *TRAC* factors, which "set forth [a] test for determining if agency action is unreasonably delayed." *Nat. Res. Def. Council, Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013). The *TRAC* factors are:

> (i) the time agencies take to make decisions must be governed by a rule of reason;
> (ii) where Congress has provided a timetable, it may supply content for this rule of reason;
> (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (iv) the effect of expediting delayed action on agency activities of a higher or competing priority;
> (v) the nature and extent of the interests prejudiced by delay; and
> (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Fangfang Xu*, 434 F. Supp. 3d at 51 (citations omitted). A plaintiff need not "demonstrat[e] that all of these factors weigh in [their] favor" to prevail on an undue delay claim under the APA. *Mu v. U.S. Citizenship & Immigr. Servs.*, 23-CV-02067 (HG), 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023). Rather, the factors are "intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80).

Here, Plaintiff argues that the Court cannot make a determination on the merits as to whether there was unreasonable delay under the APA because such determination is premature at the pleading stage. Citing to out-of-circuit district court cases, Plaintiff contends that the Court's analysis of the *TRAC* factors is fact-intensive and may require development of the evidentiary record making the analysis improper at the motion to dismiss stage. Pl.'s Opp'n at 9-10. However, district courts in the Second Circuit regularly apply the *TRAC* factors at the motion-to-dismiss stage. *See, e.g.*, *Singh v. U.S. Citizenship & Immigr. Servs.*, 24-CV-3003 (LDH), 2025 WL 964145, at *4 n.6 (E.D.N.Y. Mar. 31, 2025) (noting analysis of TRAC factors "is generally fact-

intensive" but nonetheless "courts regularly resolve unreasonable delay claims on a motion to dismiss where the facts alleged cannot sustain a claim"); *Saharia v. U.S. Citizenship & Immigr. Servs.*, 21-CV-3688 (NSR), 2022 WL 3141958, at *4 (S.D.N.Y. Aug. 5, 2022) (applying *TRAC* factors on motion to dismiss); *see also He v. Garland*, 23-CV-05386 (EK), 2024 WL 3708146 at *3 (assessing *TRAC* factors and dismissing claim for unreasonable delay in the adjudication of an I-589 asylum application on a motion to dismiss). Plaintiff has not cited to any sister courts in this Circuit, and the Court is not aware of any, that declined to apply the *TRAC* factors at the motion to dismiss stage. Further, Plaintiff has not argued why this Court should follow the determinations made by out-of-circuit courts that are at minimum incongruous with sister courts.

At the pleading stage, the Court's role is "not determining whether there has been an unreasonable delay, but rather, it is determining whether [Plaintiff's] [amended] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Kaur v. Mayorkas*, 22-CV-4514 (PAE), 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023) (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021). As it must on a Rule 12(b)(6) motion attacking the sufficiency of a complaint, the Court accepts as true the factual allegations in this amended complaint and draws all reasonable inferences in Plaintiff's favor under the *TRAC* factors.

Regarding the application of the *TRAC* factors, Defendants argue that all six *TRAC* factors warrant dismissal of this action. Defs.' Mem. at 18-23. The Court addresses these factors in turn.

**1. The First *TRAC* Factor: Rule of Reason**

With respect to the first *TRAC* factor, whether "the time agencies take to make decisions [is] governed by a 'rule of reason,'" *TRAC*, 750 F.2d at 80, Defendants argue that a last-in-first out ("LIFO") scheduling system has been found to constitute a rule of reason by other courts in the

context of asylum applications. Defs.' Mem. at 16 (citing *Xu*, 434 F. Supp. 3d at 53; then citing *Konde v. Raufer*, 23-CV-4265 (JPC), 2024 WL 2221227, at *3 (S.D.N.Y. May 16, 2024); *Zheng v. Garland*, 22-CV-6039 (AMD), 2024 WL 333090, at *6 (E.D.N.Y. Jan. 29, 2024); *Liu*, 2020 WL 2836426, at *8). Defendants further assert that the USCIS's implementation of a "second, simultaneous interview scheduling track, interviewing cases in chronological order" – a first-in-first out ("FIFO") scheduling system – has been found by one court to be "consistent with a rule of reason" in other immigration contexts. Defs.' Mem. at 16 (citing *Tawah v. Mayorkas*, 23-CV-2970, 2024 WL 2155060, at *3 (D. Md. May 14, 2024)).

This Court joins other courts in this Circuit by holding that Defendants' adjudication of asylum applications on a LIFO scheduling system, to deter fraud and abuse by disposing of "unmeritorious or frivolous applications," is an appropriate rule of reason. *Mu*, 2023 WL 4687077, at *4 (collecting cases). Plaintiff does not allege any other cause for the delayed decision. The Court is sensitive to the fact that Plaintiff has had to wait more than two years for an adjudication of his application, and thus has not seen his family during this period. However, courts have declined to find that the first *TRAC* factor favors compelling adjudication of asylum application or finding an APA violation, where such applications have been pending much longer than two years. *See Liu*, 2020 WL 2836426, at *1 (declining to compel decisions on asylum applications that had been pending for more than four-and-a-half years and dismissing complaint); *Xu*, 434 F. Supp. 3d at 48 (declining to compel decision on asylum application that had been pending for four years and dismissing complaint). However, the Court need not decide one way or the other on this factor at this time because Plaintiff has made no allegations as to other crucial *TRAC* factors. *See Ruan v. Wolf*, 19-CV-4063 (ARR) (RER), 2020 WL 639127, at *6 (E.D.N.Y. Feb. 11, 2020) (declining

to decide first *TRAC* factor where the plaintiff failed to make allegations as to the other remaining TRAC factors).

**2. The Second *TRAC* factor: Congressional Timetable**

The second *TRAC* factor provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the first factor's] rule of reason." *TRAC*, 750 F.2d at 80. As stated above, *see supra* at 6, Congress has supplied an indication of the speed with which it expects the agency to act in Section 1158(d)(5): absent exceptional circumstances, an initial interview or hearing "shall" be held no later than 45 days after the application filing date, and a final adjudication "shall" be made within 180 days of filing. 8 U.S.C. §§ 1158(d)(5)(A)(ii)-(iii). Defendants have far exceeded the statutory timetable for granting Plaintiff an interview and deciding his application.

However, the qualifying language "absen[t] exceptional circumstances" and Section 1158(d)(7)'s bar to enforce these timelines suggest that Congress did not intend for these timelines to be mandatory and contemplated that these timelines need not apply in exceptional circumstances. *Xu*, 434 F. Supp. at 53 (courts need not "ascribe much significance to this timetable" because the "timetable is not mandatory" and there is no private right of action to enforce timeframes); *Davydov v. Cioppa*, 25-CV-00688 (HG), 2025 WL 1700580, at *4 (E.D.N.Y. June 13, 2025) (same). Further, the INA timelines do not counsel against finding that the LIFO system is a rule of reason. *Maxhuni v. Mayorkas*, 23-CV-9076 (DEH), 2024 WL 3090165, at *3 (S.D.N.Y. June 20, 2024) (these statutory timelines "do not counsel against finding that the LIFO is a rule of reason"); *Jan v. Mayorkas,* 24-CV-1686 (LDH), 2025 WL 964092, at *4 (E.D.N.Y. Mar. 31, 2025) ("the timetables contained in § 1158(d)(5)(A) do not interfere with finding that the

LIFO rule provides a rule of reason, insofar as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables rendered them non-binding"); *Zhuo v. Mayorkas*, 23-CV-5416 (DLI), 2024 WL 4309232, at *4 (E.D.N.Y. Sept. 26, 2024) (first and second TRAC factors support the position that the adjudication of asylum applications pursuant to LIFO is a rule of reason).

**3. The Third and Fifth *TRAC* Factors: Health, Welfare, and Other Interests**

The third and fifth TRAC factors—whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay," *TRAC*, 750 F.2d at 80—are often analyzed together. *Qi v. U.S. Citizenship & Immigr. Servs.*, 23-CV-08843 (JLR), 2024 WL 2262661, at *6 (S.D.N.Y. May 17, 2024) ("Courts analyze TRAC factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the nature and extent of the interests prejudiced by the delay.") (quotations omitted). Plaintiff alleges that, due to the delay and uncertainty related to his asylum application, he "has suffered tremendous emotional and financial hardship"; he "is unable to permanently remain in the United States, safely and away from the dangers of his home country"; and he is unable to travel internationally to continue his work as a religious counselor and humanitarian provider, without fear of being denied reentry to the United States. Am. Compl. ¶ 31. Plaintiff also alleges that the delay in adjudicating his application has prevented him from traveling to see and say goodbye to "his ill brother." *Id.*

However, the alleged uncertainty as to the outcome of Plaintiff's application and the related financial and emotional harms are largely "inherent in the asylum application process." *Xu*, 434 F. Supp. 3d at 54; *Sheiner v. Mayorkas*, 21-CV-5272 (ER), 2023 WL 2691580, *9 (S.D.N.Y. Mar. 29, 2023) (holding that "allegations of uncertainty and delay do not amount to the showing other courts have held meets the standard of human health and welfare being at stake"); *Cohen v. Jaddou*,

21-CV-5025 (PAC), 2023 WL 2526105, at *5-6 (S.D.N.Y. Mar. 15, 2023) (travel limitations are "the sort of prejudice" inherent in the application process and that do not implicate plaintiff's or his family's health and human safety). Plaintiff's allegations regarding his inability to travel to Malaysia to "say goodbye" to his ill brother are connected to human welfare. The Court does not minimize Plaintiff's alleged harm here, but Plaintiff describes a situation that "could easily be true for" many other asylum applicants. *De Oliveira*, 2020 WL 1941231, at *5; *see Zheng*, 2024 WL 333090, at *6 (finding plaintiff's "claim that the delayed adjudication is keeping her from seeing her elderly parents in China" insufficient). As the court observed in *Chen*, "[t]his is the regrettable reality that our immigration system—'overstressed' and 'under-resourced' as it is—has wrought for many families." *Chen v. Mayorkas*, 736 F. Supp. 3d 151, 161 (E.D.N.Y. 2024), *appeal dismissed sub nom, Chen v. Noem*, 2025 WL 1466205 (2d Cir. May 22, 2025). A court order directing USCIS to place Plaintiff ahead of others would result in "no net gain" and could further delay the adjudication of other applications that have been pending longer. *De Oliveira*, 2020 WL 1941231, at *5; *Liu v. U.S. Citizenship & Immigr. Servs.*, 23-CV-2065 (RPK), 2024 WL 4436232, at *3 (E.D.N.Y. Oct. 7, 2024) (plaintiff's concern about her parents' health does not justify compelling agency action).

**4. The Fourth *TRAC* Factor: Consequences of Expediting Agency Action**

With respect to the fourth *TRAC* factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, Defendants argue that granting Plaintiff the relief he seeks "would indefensibly favor Plaintiff over others with I-589s pending without any reason other than the fact that he filed suit [where] Plaintiff fails to allege any reason

that the other applicants within the backlog are less worthy of swift adjudication." Defs.' Mem. at 20. Plaintiff does not address this argument.

Plaintiff does not explain how "leap-frogging him to the front of the adjudication queue would be beneficial to USCIS." *Chen*, 736 F. Supp. 3d at 161; *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) (declining to compel adjudication of asylum application because "the only difference between" plaintiff and other applicants was "that plaintiff has brought a federal lawsuit"); *Yang v. Houghton*, 21-CV-5485 (BMC), 2021 WL 5879033, at *1 (E.D.N.Y. Dec. 13, 2021) (declining to compel adjudication of asylum application because "it just wouldn't be fair to applicants who have been waiting longer than a plaintiff just because the plaintiff has chosen to sue"). "[W]here a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," courts may "refuse[ ] to grant relief," even if all of the other *TRAC* factors militate in favor of relief. *L.M. v. Johnson*, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015) (alteration in original) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Indeed, courts in this district have dismissed undue delay claims where the sought-after relief would "simply jump[ ] one plaintiff to the front of the line and push[ ] everyone else further back." *Yang*, 2021 WL 5879033, at *1; *accord De Oliveira*, 2020 WL 1941231, at *5; *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 224-25 (E.D.N.Y. 2021). Thus, the fourth *TRAC* factor does not favor granting relief to Plaintiff.

**5. The Sixth *TRAC* Factor: Agency Impropriety Causing Delay**

As to the sixth *TRAC* factor, a court "must determine whether the agency has acted in bad faith in delaying action," but *TRAC* makes clear that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Plaintiff does not allege any bad faith or other impropriety with respect to

the delay in the adjudication of his application. Therefore, this factor has no effect on the Court's analysis. *Cf. Qi*, 2024 WL 2262661, at *7 ("Plaintiff does not allege bad faith, unfairness, or other impropriety, so the sixth TRAC factor is neutral."); *Adbiev v. Garland*, 23-CV-8091 (DEH), 2024 WL 3742545, at *5 (S.D.N.Y. Aug. 9, 2024) (where plaintiff does not allege any bad faith with respect to the delay in adjudicating his application, the sixth factor "favors neither party").

**C. The Court Declines to Exercise Discretion**

Finally, Plaintiff argues that the Court should deny Defendants' motion because Plaintiff "has not had the opportunity to engage in meaningful discovery and develop a sufficient record of evidence that would allow this Court to make an informed decision as to the unreasonableness of Defendants' delay." Pl.'s Opp'n at 15-16. Development of the factual record is not necessary for the Court to decide the instant motion because the Court has found that Plaintiff's claim fails as a matter of law on the face of the Amended Complaint, and Plaintiff has not alleged sufficient facts to support inference that Defendants' delay is unreasonable.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied and Defendants' motion to dismiss for failure to state a clam is granted. Accordingly, Plaintiff's Amended Complaint is dismissed without prejudice to refiling if there is a continued delay or Plaintiff is able to state additional facts or causes of action.

The Clerk of Court is respectfully directed to enter judgment and close this action.

SO ORDERED.

/s/________________________
ORELIA E. MERCHANT
United States District Judge

August 4, 2025
Brooklyn, New York